MAYOR, ETC., OF CITY OF NEW YORK AND CITY OF BROOKLYN
v. DUBOIS.

(Circuit Court of Appeals, Third Circuit.   March 7, 1899.)

1. PRINCIPAL AND AGENT—POWER OF ATTORNEY TO CONDUCT OR COMPROMISE
SUIT—ACTS BINDING ON PRINCIPAL.
A written power of attorney, by which defendant appointed another
his attorney in fact to conduct "to final consummation" a pending suit in
which defendant was complainant, or to compromise the same, as to
him should seem expedient, did not confer authority upon the attorney
in fact to stipulate through counsel employed by him, and without de-
fendant's knowledge or consent, for the submission of the matter in con-
troversy to a special tribunal consisting of referees selected by him and
the adverse parties, and defendant was not bound by such a stipulation,
nor liable for the expense of the hearing thereunder.

In Error to the Circuit Court of the United States for the West-
ern District of Pennsylvania.

John McCleave, for plaintiffs in error.
Geo. A. Jenks, for defendant in error.

Before DALLAS, Circuit Judge, and BUTLER and BRAD-
FORD, District Judges.

BRADFORD, District Judge.   This action was brought to re-
cover $9,000 paid by the plaintiffs in error to certain persons as
compensation for alleged services as referees, together with interest
thereon from March 24, 1893.   The case was tried without a jury,
and the facts were specially found by the court below.   The record
filed in this court does not set forth the evidence, nor does it dis-
close the same except in so far as it appears from the findings of
facts, the defendant's points affirmed by the learned judge below
and the opinion.   Prior to June 24, 1885, John DuBois, father of
the defendant, brought suit in the circuit court of the United States
for the southern district of New York against the plaintiffs in error
and the Trustees of the New York and Brooklyn Bridge for alleged
infringement of letters patent held and owned by him.   128 Fed.
418.   The complainant in that suit on the last named day executed
and delivered to Thomas B. Farrington a power of attorney, setting
forth the title of the case, and constituting Farrington

"My true and lawful attorney for me and in my name and stead to carry
on and conduct to final consummation, or to compromise the above stated
case, and all claim, demand or damages therein claimed or mentioned, in such
manner or on such terms as to my said attorney may seem expedient, with
the same power, force and effect as I could do if personally present.   Also
to receive, and receipt for all money in any manner accruing from or out of
the same and full release, receipt and discharge to execute and deliver for the
same."

At the time of the delivery of the above power of attorney and
as part of the transaction Farrington executed and delivered to
John DuBois an instrument, as follows:

"Whereas, John DuBois has delivered to me a power of attorney, this day
to settle and compromise a certain case in the Circuit Court of the United

States in the Southern District of New York, wherein he is plaintiff, and the Trustees of the New York and Brooklyn Bridge, impleaded with the Commonalty, the Mayor and Aldermen of the cities of New York and Brooklyn, the defendants. Now, in case I shall settle and compromise said claim, I agree that immediately after the receipt of the money, or so much thereof accruing from settlement, to pay over and deliver to my said principal, John DuBois, the sum of twenty-five thousand dollars, and in no event to settle said case by compromise in such a manner that he shall not receive and realize said sum, out of said compromise. As witness my hand and seal this 24th day of July, A. D. 1885.                              Thos. B. Farrington.
   Attest:
     Geo. R. Vosburg."

John DuBois died May 5, 1886, having devised and bequeathed all his estate to the defendant in this cause, whom he appointed executor and to whom letters testamentary were duly issued May 17, 1886, in Clearfield County, Pennsylvania. The defendant executed and delivered to Farrington on June 10, 1886, an instrument extending the power of attorney given by his father, as follows:

"I, John E. DuBois, in my own right and as executor of John DuBois, deceased, do hereby make, renew and extend the within power of attorney according to its terms, and with all the powers therein set forth, and make the same irrevocable for one year from this date. As witness my hand and seal this 10th day of June, A. D. 1886.                         John E. DuBois. (Seal)"

Farrington, at the same time and as part of the transaction, executed and delivered to the defendant an instrument, as follows:

"Whereas, John E. DuBois has delivered to me a renewal and extension of a power of attorney this day, to settle and compromise a certain case in the Circuit Court of the United States in the Southern District of New York, wherein he is plaintiff and the Trustees of the New York and Brooklyn Bridge impleaded with the commonalty the mayor and alderman of the cities of New York and Brooklyn, the defendants. Now in case I shall settle and compromise said claim I agree that immediately after the receipt of the money, or so much thereof accruing from settlement, to pay over and deliver to my said principal John E. DuBois the sum of twenty-five thousand dollars, and in no event claim or charge him for my services therein nor for fees, charges or costs thereof nor to settle said case by compromise in such a manner that John E. DuBois shall not receive and realize said sum out of said compromise and I agree to indemnify him against all fees, costs and charges on account of said case. As witness my hand and seal this tenth day of June, A. D. 1886.                         Thomas B. Farrington. (Seal)"

Between June 10, 1886, and September 10, 1892, the defendant executed and delivered to Farrington instruments under seal continuing his authority as attorney in fact, the last of such instruments being in substance similar to the others and as follows:

"I hereby extend the above power of attorney upon the same terms and subject to the same conditions and stipulations under which it has heretofore been held, for the term of one year from the 10th day of June, 1892. As witness my hand and seal this 10th day of September, 1892.
                                        John E. DuBois. (Seal)"

It does not appear that at any tme after June 10, 1886, the scope of Farrington's authority was enlarged. The legislature of the State of New York passed an act June 9, 1888 (Laws 1888, p. 923, c. 564), entitled "An act to authorize the adjustment of a claim by John E. DuBois, as executor of the last will and testament of John

DuBois, deceased, and, in his own right against the cities of New York and Brooklyn, in relation to the construction of the bridge between those cities." Section 1 of the act provided as follows:

"Section 1. The mayors of the cities of New York and Brooklyn, are each authorized to appoint one person, and John E. DuBois may appoint a third person, and the three persons so appointed shall examine and report whether or not the said John E. DuBois, as executor of the last will and testament of John DuBois, deceased, or in his own right, has a just and valid claim against the said cities, for the use in the construction of the bridge between said cities of improvements in the mode of building piers for bridges and other structures, for which it is claimed that letters patent were granted to the said John DuBois, now deceased, by the United States, dated the twenty-third day of September, eighteen hundred and sixty-two, which have been sustained by a decision of the Supreme Court of the United States, and if they find that he has such a claim, what would be a fair and reasonable compensation for the use of such improvements, and upon a report by the three persons so appointed, or a majority of them, that such a claim is just and valid, if the report shall be approved in writing by the Mayors of both of the said cities, the comptroller of each city shall pay to the said John E. DuBois, as executor as aforesaid and in his own right, or his legal representative, out of any of the revenues of the city the amount reported by the three persons so appointed to be a fair and reasonable compensation for such use, or such part thereof, as shall be authorized and directed in writing by the Mayors of both of the said cities in the proportion in which payments by the said cities, on account of the said bridge, are required to be made by law, upon the execution and delivery by the said John E. DuBois, as executor, as aforesaid, and in his own right or his legal representatives, to each of the said comptrollers, of a release of any and all claims against the said cities for the use of said improvement."

Section 2 provided that—

"the persons so appointed shall have power in the performance of the duty aforesaid to take testimony under oath, which any of them may administer, and to procure proper evidence by experts;"

and section 3 provided that the act should take effect immediately. Afterwards, but on what day does not appear, although it was not later than June 3, 1891, a written agreement was executed by the counsel for the cities of New York and Brooklyn respectively, and by certain attorneys assuming to represent John E. DuBois, as follows:

"In the matter of the claim of John E. DuBois as executor of the last will and testament of John DuBois, deceased, and in his own right against the cities of New York and Brooklyn, in relation to the construction of the bridge between those cities. Before:

Stephen V. White, Jasper W. Gilbert, Charles M. Clancy. Referees appointed pursuant to chapter 564 of the laws of 1888.

It is stipulated as follows: The fees of the referees shall be to each the sum of $25 per session of from 12 to 4 o'clock, these fees to be paid at the close of the reference and the rendition of the report of the referees, and to be advanced by the successful and taxed against and paid by the defeated party.

John E. DuBois, individually and as executor, and the Mayor, Alderman and Commonalty of the City of New York and the City of Brooklyn, and the Trustees of the New York and Brooklyn Bridge, agree that the action pending between them in the United States Circuit Court for the infringement of patents relating to the placing of piers in deep water shall be discontinued immediately upon the report of the referees appointed under chapter 564 of the Laws of 1888, being made, providing the same shall be adverse to the

claimant, or in case the said report be favorable to the said claimant and the report be approved in writing by the Mayors of both the said cities and the amount awarded by the report so approved be paid; but it is expressly understood and agreed that nothing contained in this minute shall be construed as a stipulation or agreement, on the part of the said Mayors, or either of them, that the said report when made shall be approved by them, or either of them. Such discontinuance shall not be made provided the said act shall be repealed before the payment of the award. Written pleadings shall be prepared by the parties, the claimant to submit his pleadings within seven days, and the cities of New York and Brooklyn to have thirteen days thereafter, in which to answer; and if no further pleadings are submitted, the issues arising to be tried according to law, and that the rules of law governing the admissibility of testimony in cases in the courts of law shall be adhered to. Either party may read the testimony of the witnesses in case of John DuBois against the Mayor, Alderman and Commonalty of the City of New York, the City of Brooklyn and the Trustees of the New York and Brooklyn Bridge in said United States Circuit Court, with the same force and effect and subject to the same objections as though the same were taken herein, the parties so reading to produce, upon reasonable notice for cross-examination, the witnesses whose testimony he reads. It is also stipulated that two referees may hold meetings and take testimony in the absence of the third referee. It is further agreed that nothing contained in the act of the Legislature under which the referees are appointed, shall be construed to affect in any way any defense before the referees which the two cities or the Trustees or either of them might urge in the courts of the United States to answer to a suit upon the patent in question, and every such defense shall be available to the two cities and the Trustees.

Almet F. Jenks,
Corporation Counsel of Brooklyn.
Wm. N. Clark,
Corporation Counsel of New York.
Knevals & Perry, and N. J. & N. J.
Waterbury, Jr.,
Attorneys for John E. DuBois."

## Some of the further findings of fact are as follows:

"9. The said Thomas B. Farrington—assuming to act for the defendant John E. DuBois but without any authority to do so other than that conferred by the above recited power of attorney and renewals thereof—of his own motion joined in the aforesaid reference under the said act of the legislature of New York and employed therein counsel and attorneys at law, namely, Knevals & Perry and N. J. and N. J. Waterbury, Jr., and by his (Farrington's) authority and not otherwise they signed the above recited stipulation. The defendant personally did not take any part in entering into said reference or in making said stipulation or in the proceedings thereunder. The defendant did not attend any of the meetings of the referees, and it does not appear that he had any knowledge of any of these matters until after the proceedings under the reference had fully terminated.

10. On the fifteenth day of February, 1893, the above named referees made a report in writing against the aforesaid claim of the defendant and favorable to the plaintiffs herein and delivered a copy of their report to each of the plaintiffs but none to the defendant.

11. On or about the twenty fourth day of March, 1893, the referees rendered to the plaintiffs herein a bill for their services, namely, $3,000 for each referee, making a total of $9,000 and this sum was paid to the referees by the plaintiffs. For the reimbursement of the plaintiffs this suit was brought upon the above recited stipulation.

12. There never was any taxation of the fees of the referees. In making out their bill the referees paid no regard to the terms of the above stipulation, but charged what they considered was a fair compensation for their services without taking into account the number of days they held sessions.

13. It is difficult to determine with precision from the evidence the number

of days upon which sessions were held by the referees. It would seem that they did not exceed eighteen. On several of these days only one referee attended, and only about six days were the three referees present.

14. The sessions of the referees were conducted without any regard to the provision in the stipulation—'The fees of the referees shall be to, each the sum of $25 per session of from 12 to 4 o'clock.' It does not appear that a single one of the sessions held by the referees lasted four hours or that they sat that long on any day.

15. One of the referees, Jasper W. Gilbert, not regarding the reference 'as a trial in court,' privately consulted Mr. Van Buren, the engineer of the New York City Water works in respect to mechanical and engineering subjects connected with the subject-matter of the controversy, and these private consultations with Mr. Van Buren were for the purpose of 'posting' said referee or giving him information upon which to act, and they took place while the case was under consideration by the referees, and before report made."

The court below further found that "there is no evidence sufficient to prove that Knevals & Perry and N. J. & N. J. Waterbury, Jr. were agents or attorneys of John E. DuBois."

On the foregoing facts we are clearly of opinion that in no aspect of this case are the plaintiffs entitled to recover. The extent of the authority conferred by the defendant on Farrington was to prosecute the former case "to final consummation" or to compromise it on such terms as to Farrington should "seem expedient"; the latter agreeing that no compromise should be effected in such manner as not to yield $25,000 to his principal. It may, without deciding the point, be assumed for the purposes of this case, that Farrington's undertaking not to compromise for less than $25,000 could not bind or affect third persons with whom he dealt as attorney in fact. His agency, however, so far as it related to a compromise, was a personal trust and confidence reposed in him, involving the exercise of his own judgment as to terms of settlement and incapable of delegation to referees or other persons. No compromise within the terms or scope of his authority was effected by Farrington, nor did he prosecute the case "to final consummation" pursuant to that authority. On the contrary, without the consent or knowledge of the defendant in error, and in clear violation of the trust he had assumed, he either personally or through attorneys employed by him co-operated with the representatives of the cities of New York and Brooklyn in securing the creation of a special tribunal to dispose of the case, consisting of three referees, two of whom were chosen by those cities respectively and were empowered, according to the provisions of the New York act of assembly, to make an award, which, if against the defendants, should not be operative until approved by the Mayors of both cities, and in case of such approval should be operative and final only to the extent to which it had been so approved. By the terms of the submission it was "expressly understood and agreed that nothing contained in this minute shall be construed as a stipulation or agreement on the part of the said Mayors, or either of them, that the said report when made shall be approved by them or either of them." The result of the reference, as has appeared, was an award in favor of the cities. The course pursued by Farrington was not a proper, usual or reasonable procedure either for conducting the suit to its termination or for effecting a com-

promise of it.   It was a wanton or reckless sacrifice by him of the substantial right of the defendant in error to have his claim decided by an impartial tribunal fairly constituted and without conditions calculated to defeat a recovery of a just claim.   The method adopted for the disposition of the case was so unusual, unfair and remarkable as to impose upon the referees and the counsel for the cities the necessity of inquiring into the authority of Farrington or of the attorneys employed by him, but apparently representing the defendant in error, to procure or take part in the reference.   To indulge in a mere assumption that the defendant in error had conferred power of such extraordinary character upon an attorney at law or an attorney in fact, could afford no justification for relying upon its existence.   It does not appear that any such inquiry was made or that either Farrington or the attorneys employed by him stated to the counsel for the cities or to the referees at any time that the defendant in error had in fact conferred upon him or them such authority.   The defendant in error was not aware of the reference or of the proceedings under it, and it does not appear that he has in any manner ratified them.   Under these circumstances, so far as the defendant in error was concerned, the referees acted under the submission at their own peril and the cities equally acted at their own peril in advancing to them $9,000 as compensation. The money so paid to the referees furnished no basis for any claim against the defendant in this suit.   It is unnecessary to allude to other matters of defense.

The judgment below is affirmed.

NOTE BY THE COURT.   The conclusion reached in the foregoing opinion had been concurred in by all the judges who sat in the case, prior to the resignation of Judge Butler.   The judgment is therefore the unanimous judgment of the court as it was constituted upon the hearing.